M.M. v Weissler (2024 NY Slip Op 51680(U))

[*1]

M.M. v Weissler

2024 NY Slip Op 51680(U)

Decided on December 12, 2024

Supreme Court, Westchester County

Giacomo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 12, 2024
Supreme Court, Westchester County

M.M., an infant by her mother and natural guardian E.M., and E.M. Individually, Plaintiffs,

against
Karen Weissler, M.D., ADONIA DENNIS, M.D., WHITE PLAINS HOSPITAL MEDICAL CENTER, BOSTON CHILDRENS HEALTH PHYSICIANS, LLC, and NATASHA BAMJI, M.D., Defendants.

Index No. 59862/2019

Attorney for Plaintiffs: 
Victoria Wickman, Esq. 
Law Office of Victoria Wickman
40 Exchange Place, Suite 500
New York, New York 10005
(212) 374 — 9161
Attorney for Defendant Boston Children's Health Physicians, LLC: 
Barbara D. Goldberg, Esq. 
Martin Clearwater & Bell, LLP
245 Main Street
White Plains, New York 10601
(914) 328-2969
Attorney for Natasha Bamji, M.D. 
Deirdre E. Tracey, Esq. 
Aaronson Rappaport Feinstein & Deutsch, LLP
600 Third Avenue
New York, New York 10016
(212) 593-6700

William J. Giacomo, J.

Plaintiffs move for an order, pursuant to CPLR 4404, setting aside the jury verdict rendered in this action as against the weight of the credible evidence. Plaintiffs also request that a verdict in favor of plaintiffs be entered and an inquest held on damages, including interest, costs and disbursements, or that a new trial be granted. They also request the Court conduct a hearing into juror misconduct during deliberations. 
Papers ConsideredNYSCEF Doc. No. 233-234; 247-258
Notice of Motion/Exhibit A
Affirmation of Barbara D. Goldberg, Esq. in Opposition/ Exhibits A-H
Affirmation of Deidre E. Tracey, Esq. in Opposition/ Memorandum of Law/Exhibits A-B

FACTUAL AND PROCEDURAL BACKGROUND

In brief, plaintiffs commenced this action by filing a summons and complaint on June 28, 2019. Plaintiffs assert medical malpractice claims arising out of the medical treatment of the infant plaintiff from her birth in early July 2018 through December 18, 2018. Plaintiffs claim that defendants failed to timely and properly diagnose the infant with anal stenosis and a rectovaginal fistula during the subject time frame.
Defendants Adonia Dennis, M.D. and White Plains Hospital Medical Center mediated with plaintiff and ultimately agreed to settle the infant's cause of action for personal injuries on behalf of those defendants only. On November 2, 2023, plaintiff made an application for an Order compromising the settlement of the action pursuant to CPLR 1207. 
A trial proceeded against the Boston Childrens Health Physicians, LLC (BCHP), through its employee Dr. Avvocato, and against defendant Natasha Bamji, M.D. (Dr. Bamji), a pediatric gastroenterologist. Dr. Avvocato is the infant's pediatrician and referred the infant to Dr. Bamji, who saw the infant plaintiff on one visit on September 26, 2018. Dr. Avvocato also saw the infant plaintiff on November 13, 2018 for her four-month well-visit. The infant plaintiff ultimately presented to Westchester Medical Center in December 2018 and was diagnosed with anorectal malformation. 
On April 4, 2024 the jury rendered a verdict in favor of the defendants. Specifically, in relevant part, the jury was presented with the following questions: did defendant Boston Children's Health Physicians, LLC through its employee G. Patricia Avvocato, M.D. depart from good and accepted medical practice by not performing a digital rectal examination on the infant plaintiff on November 13, 2018; and did defendant Natasha Bamji, M.D. depart from good and accepted medical practice by not performing a digital rectal examination on the infant plaintiff on September 26, 2018. All six jurors responded "No" to both questions. 
In support of their motion, plaintiffs provide various parts of the trial testimony and evidence to support their argument that the verdict should be set aside. To start, the infant [*2]plaintiff's mother testified that the infant's abdomen was distended on both visits to defendants. The jury was also provided with pictures of the infant plaintiff's abdomen on various dates.However, neither doctor noted an abdominal distention in their records and Dr. Bamji testified at trial that the mother did not inform her of the constipation. Plaintiff's expert testified that the cause of the abdominal distention, within a reasonable degree of medical certainty, would be anal distention. According to plaintiffs, it does not make sense that the mother would fail to mention constipation. Further, assuming the mother told Dr. Bamji that the infant plaintiff had been constantly spitting up, Dr. Bamji should have performed a rectal examination in light of the abdominal distention, but failed to do so. Plaintiffs' expert also testified that the infant's abdomen would have also been visibly distended during her visit with Dr. Avvocato. 
Plaintiffs claim that the only issue the jury had to determine is whether the infant plaintiff had abdominal distention on the date of her visit with Dr. Bamji and the November 13, 2018 visit with Dr. Avvocato. According to plaintiffs, if the infant plaintiff had abdominal distention on the visits, anorectal malformation should have been considered as a diagnosis, and would need to be ruled out by performing a digital rectal examination. Further, both defendants allegedly conceded that if the baby had abdominal distention on the date of the visits in conjunction with the complaints made at those visits, the diagnosis should have included anorectal malformation. Further, based upon the medical testimony and the photographic evidence depicting an enlarged distended abdomen, there is no possible way that this jury reached its verdict on any fair interpretation of the evidence. 
Plaintiffs also argue that the jury failed to evaluate the evidence presented during the trial and rendered a verdict based on impermissibly discovered evidence. First, the jury "asked for the telephone call log from Dr. Avvocato's office from the date of the Bamji visit until the date of the November 13, 2018 Avvocato visit." According to plaintiff, this request demonstrates that the jury must have been impermissibly evaluating the conduct of the mother, and not the defendants, when rendering the verdict. 
Next, plaintiffs allege that the jury reached its verdict based on knowledge that the infant's case previously settled against the hospital. According to plaintiffs, juror number six, who is a practicing lawyer, must have impermissibly looked at the e-filed infant compromise application to discover the settlement, and then informed the jury of this information. Further, this juror allegedly advised the Court Officer assigned to the case that she knew the case settled against the hospital. Plaintiff requests a hearing to determine whether juror number six engaged in misconduct during the hearing. Plaintiffs argue that based on the allegedly overwhelming evidence in their favor, there is no reasonable basis for the jury to have reached the conclusion they did without their verdict being based on the knowledge that the infant's case previously settled against the hospital.
In opposition, BCHP argues that the verdict is supported by, and based on a fair interpretation of the evidence, including the testimony of Dr. Bamji, Dr. Avvocato and the defense experts. Dr. Avvocato testified that based on her notes, there was no abdominal distention on November 13, 2018, that the infant's exam was normal and thus no rectal examination was warranted. The visit was documented as a normal four-month well visit, as, among other things, the baby's abdomen was soft and nondistended, the bowel sounds were normal, and the anus and perineum were normal. BCHP claims that this evaluation must be viewed in light of what Dr. Avvocato knew at the time, not based on hindsight after a subsequent diagnosis of anal stenosis was made. 
Here, Dr. Avvocato examined the infant by taking her clothes off, not by looking at photographs. A defense expert testified that a diagnosis of abdominal distention cannot be made by looking at a picture and that, among other things, as the baby was thriving and gaining weight, the spitting up did not cause a high degree of concern. Even when the infant was ultimately diagnosed with an anorectal malformation, she was thriving and vigorous. In addition, there was no reason to perform a digital rectal examination, which was uncomfortable and invasive, nor should Dr. Avvocato have suspected anal stenosis. 
According to BCHP, the mother did not express any concerns to Dr. Bamji or Dr. Avvocato about abdominal distention. Even if the abdomen was distended, this itself was not a cause for concern. BCHP notes that the jury was permitted to consider the pictures of the infant plaintiff, over defendant's objections. According to BCHP, the jury was permitted to conclude that the photographs do not show abdominal distention, that a diagnosis of abdominal distention cannot be made from photographs but requires an in person examination and that it was within the standard of care not to perform a digital rectal examination. 
BCHP also argues that the arguments regarding juror misconduct are speculative. For instance, plaintiffs' hypothetical scenario of the attorney/juror improperly influencing the jury is not based on affidavits from persons with knowledge of the facts.
Further, the jury is entitled to request any records in evidence, or none at all, and is entitled to weigh the credibility of the witnesses and the plaintiff mother. For example, the mother testified that the infant's belly looked as if she swallowed a basketball. However, Dr. Avvocato testified that the mother never reported claims of abnormal abdominal distention. According to BCHP, the lack of communication about perceived symptoms between the two visits may have been relevant to Dr. Avvocato's assessment of the infant on November 13, 2018.
Similar to what was argued by BCHP, Dr. Bamji argues that the unanimous jury verdict in favor of Dr. Bamji was based upon a fair interpretation of the evidence. Dr. Bamji evaluated the infant plaintiff one time on September 26, 2018. When the infant presented, the chief complaint was spitting up. She had no history of straining, getting red in the face, abdominal pain, constipation or other symptoms of abdominal distention. Dr. Bamji testified that she performed a physical examination of the infant with the infant unclothed down to her diaper. This included a visual inspection, abdominal palpation, and listening to the bowel sounds. She testified that had there been any abdominal distention, she would have documented it. 
After reviewing the infant's entire clinical picture which was presented to Dr. Bamji, the defense expert testified that Dr. Bamji did not depart from good and accepted medical practice by not performing a digital rectal examination. The experts also testified that the infant's pictures would have no medical significance for determining whether the infant had abdominal distention on the date of the visit. Further, none of the indications of abdominal distention due to a colon filled with stool were present when Dr. Bamji examined her. For example, if the colon was completely filled with stool and unable to pass it on the date that Dr. Bamji examined her, the infant plaintiff would not have been happy, healthy and thriving. Finally, Dr. Bamji argues that the jury was entitled to accept Dr. Bamji's version of the evidence that the only complaint was spitting up constantly and that there was no abdominal distention. 
Dr. Bamji also argues that there is no basis for a hearing or any other form of relief for purported juror misconduct. According to Dr. Bamji, plaintiff's arguments for juror misconduct are based on multiple levels of hearsay and speculation. In addition, even when there is some proof of some degree of juror misconduct, the Courts have routinely declined to set aside a jury [*3]verdict. DISCUSSION
Medical Malpractice 
"To establish the liability of a physician for medical malpractice, a plaintiff must prove that the physician deviated or departed from accepted community standards of practice, and that such departure was a proximate cause of the plaintiff's injuries." Dominge v Dannenberg, 228 AD3d 729, 730 (2d Dept 2024) (internal quotation marks omitted)
Setting Aside the Jury Verdict
Plaintiffs now move, pursuant to 4404 (a) to set aside the jury verdict as against the weight of evidence. CPLR 4404 (a) provides, in relevant part, that after a jury trial, "upon the motion of any party . . . , the court may set aside a verdict or any judgment entered thereon and direct that judgment be entered in favor of a party entitled to judgment as a matter of law or it may order a new trial of a cause of action or separable issue where the verdict is contrary to the weight of the evidence."
"A motion for judgment as a matter of law pursuant to CPLR 4404 may be granted only when the trial court determines that, upon the evidence presented, there is no valid line of reasoning and permissible inferences which could possibly lead rational persons to the conclusion reached by the jury upon the evidence presented at trial, and no rational process by which the jury could find in favor of the nonmoving party." Messina v Staten Is. Univ. Hosp., 121 AD3d 867, 867 (2d Dept 2014) (internal citations omitted). A jury verdict should not be set aside as contrary to the weight of the evidence unless the jury could not have reached the verdict on any fair interpretation of the evidence. Walter v Matano, 81 AD3d 636 (2d Dept 2011)."Whether a verdict should be set aside as contrary to the weight of the evidence is not a question of law, but instead requires the discretionary balancing of various factors." Palermo v Original California Taqueria, Inc., 72 AD3d 917, 918 (2d Dept 2010). It is well settled that "[i]ssues of credibility are for the jury, which had the opportunity to observe the witnesses and the evidence. Its resolution is entitled to deference." Aronov v Kanarek, 166 AD3d 574, 575 (2dDept 2018) (internal quotation marks omitted). 
Here, as set forth below, there was a valid line of reasoning and permissible inferences which could have led a rational jury to the conclusion that the defendants did not depart from good and accepted medical practice by not performing a digital rectal examination on the infant plaintiff on September 26, 2018 and November 13, 2018. Both defendants testified that the infant plaintiff did not present with an abdominal distention and that the mother did not complain about distention or constipation. Upon examination the infant plaintiff appeared normal and thriving. Moreover, defendants' experts testified that, under the circumstances, it was appropriate for both doctors not to perform a digital rectal examination. Further, defendants testified that a determination of whether or not the infant plaintiff had abdominal distention is made by a physical examination and not by a photograph. 
Contrary to plaintiffs' contentions, the jury was not asked to determine whether the infant plaintiff had abdominal distention on the date of her visit with Dr. Bamji and the November 13, 2018 visit with Dr. Avvocato. In any event, the plaintiffs' expert was shown a picture of the infant plaintiff taken two days after seeing Dr. Bamji. The plaintiffs' expert testified that, based on the appearance of the abdomen in the photo, the infant plaintiff's abdomen was distended when she saw Dr. Bamji and that the cause of the distention was anal stenosis. Plaintiffs also argue that the allegedly undeniable photographic evidence indicated that the infant plaintiff had a [*4]distended abdomen when she saw Dr. Avvocato on November 13, 2018. However, the jury looked at the pictures and did not find them to be of any probative value, nor did it credit the testimony of plaintiff's expert. See e.g. Aronov v Kanarek, 166 AD3d at 575 ("The jury was also entitled to credit the testimony of the defendants' expert in obstetrics and gynecology that, based upon the medical record and the defendant's testimony, the standard of care did not require him to test the plaintiff for a nickel allergy before or after the procedures").
Further, although the mother testified that she advised the defendants of the abdominal distention and/or the constipation, the jury was entitled to credit the defendants' testimony to the contrary. See e.g. Id. ("Although the plaintiff testified that she informed the defendant that she had experienced a reaction to non-gold jewelry and belt buckles as a child, the jury was entitled to credit the defendant's testimony to the contrary").
Moreover, the Court finds sufficient evidence in the record to support the jury's determination. As noted by the defendants and the experts, the treatment decisions must be based on what the defendants knew at the time, and not in hindsight. See e.g. Henry v Bronx Lebanon Medical Center, 53 AD2d 476, 480-481 (1st Dept 1976) ("The defendants are to be judged on the facts as they existed [at the time of the claimed negligence] and not in retrospect in light of subsequent events").
In addition, the jury was entitled to request the telephone records from the doctor's office, and entitled to resolve any credibility issues or conflicting inferences. See e.g. Bravato v Berkshire Life Ins. Co., 69 NY2d 916, 918 (1987) ("where, as here, conflicting inferences may reasonably be drawn from evidence, a question of fact is presented for resolution by the jury"). Plaintiff only speculates that the defendants received a verdict in their favor due to, in part, the jurors evaluating the conduct of the mother and not the defendants. 
Alleged Juror Misconduct
"It has long been the law that, with narrow exceptions, jury verdicts may not be impeached by probes into the jury's deliberative process." Khaydarov v AK1 Grp., Inc., 173 AD3d 721,722 (2d Dept 2019) (internal quotation marks omitted). Here, plaintiffs also claim, without providing any affidavits in support, that juror number six, who was an attorney, advised the Court Officer that she knew the case settled against the hospital. However, as set forth below, in this case, "plaintiff's argument with respect to alleged juror misconduct is unavailing" and plaintiff has not met the standard required to hold a hearing. Khaydarov v AK1 Grp., Inc., 173 AD3d at 722. 
Plaintiffs' allegations of juror misconduct primarily hinge on the assertion that juror number six, an attorney, improperly influenced the jury's deliberations by disclosing information about a previous settlement. According to plaintiffs, juror number six informed the Court Officer that she knew the case had settled against a previous defendant. Plaintiffs argue that as an attorney, juror number six had the means to access the court's e-filling system, thereby discovering the settlement details.
Plaintiffs believe that this knowledge was shared with the jury and negatively influenced the verdict, arguing that the decision was based on the knowledge of the settlement rather than the evidence presented during the trial. These claims, however, remain speculative as they lack direct evidence showing that juror number six disseminated this information during deliberations. Without credible proof, the claims do not meet the threshold for further investigation. See e.g. Snediker v County of Orange, 58 NY2d 647, 649 (1982) ("since the circumstances to which the motion was directed were based on little more than speculation as to [*5]the possibility of prejudice, no testimonial inquiry of the jurors should have been undertaken at all"). 
Moreover, the Appellate Division, Second Department has held that "the hearsay statement of a juror, relayed in an affirmation of an attorney, could not be used to impeach the verdict." Khaydarov v AK1 Grp., Inc., 173 AD3d at 723. Here, the juror's hearsay statements were not even relayed to an attorney, but to the Court Officer. Further, plaintiffs' attorney failed to bring this issue to the Court's attention at the time.
In light of the above, the jury's "determination was based on upon a fair interpretation of the evidence," and there is no basis to disturb the jury's resolution of the issues. Augustine v New York City Tr. Auth., 118 AD3d 475, 476 (1st Dept 2014). 
All other arguments raised on this motion and evidence submitted by the parties in connection thereto have been considered by this court notwithstanding the specific absence of reference thereto.

CONCLUSION

Accordingly, it is hereby
ORDERED that plaintiffs' motion to set aside the jury verdict, and any other requested relief, is denied. 
The above constitutes the Decision and Order of this Court.
White Plains, New York
December 12, 2024
HON. WILLIAM J. GIACOMO, J.S.C.